UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NORMAN A. TAPPER, III, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
|     vs. | )   CAUSE NO. 2:13-CV-304-RLM-JEM |
| | ) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|     DEFENDANT. | ) |

OPINION and ORDER

Plaintiff Norman Tapper seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II, 42 U.S.C. § 423 *et seq.*, of the Social Security Act. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the court reverses and remands this case to the Social Security Administration for further proceedings consistent with this opinion.

I. BACKGROUND

Mr. Tapper filed his initial application for benefits on March 12, 2010 and asserts that he became disabled on January 19, 2010 due to several physical impairments, most notably coronary artery disease and obesity. His application for benefits was denied initially, upon reconsideration, and after an administrative hearing held on June 11, 2012 at which he was represented by

counsel. At that hearing, the administrative law judge heard testimony from Mr. Tapper and vocational expert Leonard Fisher. In the written decision that followed, the ALJ found that Mr. Tapper's coronary artery disease and obesity were severe impairments, but didn't individually or in combination meet or medically equal the severity of those impairments that are considered conclusively disabling. The ALJ found that Mr. Tapper could perform his past work because that work didn't require the performance of activities precluded by his residual functional capacity. As a result, the ALJ concluded Mr. Tapper wasn't disabled within the meaning of the Act. *See* 20 C.F.R. § 416.920(f) ("Your impairment(s) must prevent you from doing your past relevant work."). The Appeals Council denied review of the ALJ's decision, making the decision the final determination of the Commissioner. 20 C.F.R. § 416.1481. The parties agree the matter is properly before this court.

## II. STANDARD OF REVIEW

The court must affirm the Commissioner's determination if it is supported by substantial evidence, 42 U.S.C. § 405(g); <u>Scott v. Astrue</u>, 647 F.3d 734, 739 (7th Cir. 2011), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); *see also* <u>Jones v. Astrue</u>, 623 F.3d 1155, 1160 (7th Cir. 2010). The court can't re-weigh the evidence, make independent findings of fact, decide questions of credibility, or substitute its

own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009), but in reviewing the ALJ's conclusions, "[t]he court will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

III. DISCUSSION

The Social Security Administration uses a sequential five-step analysis to determine if a claimant is disabled. *See* 20 C.F.R. § 416.920 (evaluation of disability of adults, in general); *see also* Craft v. Astrue, 539 F.3d 668, 673-674 (7th Cir. 2008). The first step considers whether the claimant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that the regulations treat as conclusively disabling. If the impairment meets or equals one of the listed impairments, the applicant is

considered disabled; if the impairment doesn't meet or equal a listed impairment, the evaluation continues. The fourth step assesses a claimant's residual functional capacity and ability to engage in past relevant work. A claimant who can engage in past relevant work isn't disabled. The fifth step assesses the claimant's RFC, as well as his age, education, and work experience to determine whether the claimant can engage in other work. A claimant who can engage in other work isn't disabled.

Using the standard five-step evaluation for determining disability, the ALJ found that although Mr. Tapper suffered from coronary artery disease and obesity, those severe impairments didn't meet or medically equal the criteria of an impairment listed in Appendix 1 of the SSI Regulations (20 C.F.R. Part 404, Subpart P, Appx. 1). The ALJ then found that Mr. Tapper had the residual functional capacity to perform a full range of work at all exertional levels and with the following nonexertional limitations: limited to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; prohibited from climbing ladders, ropes, or scaffolds; and prohibited from working around unprotected heights or hazardous moving machinery. With this RFC, the ALJ concluded Mr. Tapper could perform his past work as an account executive, auto sales representative, or electronic technician and so wasn't disabled.

On appeal, Mr. Tapper challenges the ALJ's determination at step four that he had the residual functional capacity to perform a full range of work at

all exertional levels. He argues that the record doesn't support the RFC, that the ALJ didn't properly consider the opinion evidence, and that the ALJ improperly discredited his testimony.

## A. Step Four

At the fourth step of the ALJ's analysis, the ALJ must determine the claimant's residual functional capacity and whether, with the appropriate RFC, the claimant can engage in his or her past relevant work. The ALJ considers the extent to which the claimant's symptoms are consistent with the evidence, 20 C.F.R. § 404.1529(a), and considers the medical opinion evidence. 20 C.F.R. § 404.1527(b). The ALJ must determine whether the underlying medically determinable physical or mental impairment could reasonably be expected to produce the claimant's pain or symptoms. 20 C.F.R. § 404.1529(b). If so, the ALJ then evaluates the intensity, persistence and limiting effects of the symptoms to determine the extent to which they limit the claimant's functioning. 20 C.F.R. § 404.1529(c). If statements are made to this effect that aren't substantiated by objective medical evidence, the ALJ must make a credibility finding based on the entire case record. SSR 96-7p (July 2, 1996).

To begin with, the ALJ discussed Mr. Tapper's testimony: Mr. Tapper had shortness of breath if he walked 100 feet; he sometimes experienced achiness when sitting; he had tightness in his chest one to two times a week; he could stand for only 15-20 minutes; he had trouble standing; and he had aches in

his legs. The ALJ concluded that Mr. Tapper's medically determinable impairments could reasonably be expected to cause his symptoms, but his testimony as to his symptoms' intensity, persistence, and limiting effects wasn't credible to the extent it was inconsistent with the ALJ's RFC assessment. Mr. Tapper points out that the ALJ used the credibility boilerplate language that the court of appeals has criticized. The court cautions the ALJ against using this relatively meaningless credibility language. *See* Garcia v. Colvin, 741 F.3d 758, 762 (7th Cir. 2013) (ALJ used "boilerplate cart-before-the-horse credibility formula"); Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012) (*quoting* Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004)) ("Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."). Because the ALJ further examined Mr. Tapper's testimony, the use of the boilerplate language isn't dispositive of the credibility issue.

Mr. Tapper's overarching complaint is that the ALJ didn't base his RFC assessment on the objective medical evidence or the medical opinions of record. The Commissioner argues that substantial evidence supports the ALJ's decision. "An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." Arnett v. Astrue, 676 F.3d 586, 591 (7th Cir. 2012) (*citing* 20 C.F.R. § 404.1545(a)). The court will uphold the ALJ's decision as to the appropriate RFC "if the evidence supports the decision and the ALJ explains his analysis of the

evidence with enough detail and clarity to permit meaningful review. Id. at 591-592. The court finds the ALJ articulated his reasoning and cited evidence from the record to support his conclusion. Nevertheless, the ALJ glossed over and ignored relevant evidence, leaving the court unable to find that the decision is supported by substantial evidence. The ALJ also didn't provide a logical bridge between the evidence, including the medical opinions, and his conclusion that Mr. Tapper had no exertional limitations.

B. Objective Medical Evidence

Initially, the ALJ noted Mr. Tapper's medical history of coronary artery disease with coronary artery bypass graft surgery with the placement of stents. He observed the surgery occurred many years before (2007) Mr. Tapper's alleged onset date in January 2010. The ALJ then discussed Mr. Tapper's treatment notes from 2009, 2010, and 2011. He highlighted that Mr. Tapper's coronary artery disease was considered "asymptomatic" and Mr. Tapper reported "doing well" (January 2010) and "feeling well" (April 2011). The ALJ characterized Mr. Tapper's treatment as generally routine, with no hospitalizations and only one cardiac diagnostic test.

The ALJ then examined notes from Mr. Tapper's appointments with his cardiologist, Clifford J. Kavinsky, M.D., Ph.D., starting with the April 2011 appointment. The ALJ highlighted that Mr. Tapper reported chest pain only when he coughed, which was the result of bronchitis, no palpitations, no

syncope, no dizziness, and intermittent pain in his bilateral calves when he walked. His physical examination revealed a normal cardiovascular system, full range of motion, full muscle strength, and a normal musculoskeletal system, except some reduced peripheral pulses. Mr. Tapper reported that he could walk one to two blocks without getting short of breath, which the ALJ noted was inconsistent with his hearing testimony.

Next, the ALJ discussed Mr. Tapper's October 2011 appointment with Dr. Kavinsky, at which Mr. Tapper reported that he felt well, had no shortness of breath, no chest pain, no syncope or presyncope, and no lower extremity edema or PND/orthopnea. The ALJ found the results of an EKG and stress test were normal, but the record only reflects normal results for the EKG. The stress test for cardiac clearance for gastric bypass surgery, which was ordered at this appointment, doesn't seem to have been completed.

The ALJ said the cardiologist's notes showed no balance issues, either reported or observed during an appointment, which was inconsistent with Mr. Tapper's hearing testimony. The general impression the ALJ drew from Dr. Kavinsky's treatment notes was that Mr. Tapper had no reported or recorded symptoms and this conflicted with his hearing testimony about his limitations.

The ALJ then looked at the report from the June 2010 consultative exam performed at the State Agency's request. During the exam, the ALJ noted, Mr. Tapper had a regular heart rate and rhythm, was able to ambulate and get on and off the examination table easily, showed no signs of fatigue or distress, and

didn't demonstrate any pain behavior with ambulation. The ALJ found the exam report was consistent with Mr. Tapper's treatment record with his cardiologist and he gave the report great weight (more on this later). The ALJ stated the consultative examiner opined that Mr. Tapper had no restrictions with respect to work-related activities.

Based on this objective medical evidence, the ALJ concluded that Mr. Tapper appeared to be doing well with no shortness of breath or chest pains, unremarkable diagnostic testing, and routine treatment. As a result, the ALJ found that Mr. Tapper had no exertional limitations. To account for Mr. Tapper's "complaints," his cardiac history, and an echocardiogram report, the ALJ placed restrictions on Mr. Tapper's postural abilities and his environment. The ALJ also briefly discussed Mr. Tapper's reported medication side effects,[1] daily living activities testimony,[2] and work history,[3] before moving on to the medical opinion evidence, as discussed below. The ALJ made the exertional limitation conclusion before reaching the other evidence. Perhaps this

---

[1] The ALJ considered Mr. Tapper's testimony about the side effects of his medications, including severe headaches from Nitroglycerin and upset stomach, itchiness, and hot flashes. The ALJ determined these side effects weren't well documented in the medical record and noted in December 2011, Mr. Tapper denied any side effects from his medications.

[2] The ALJ distinguished Mr. Tapper's testimony about his daily living activities (watch television, eat, nap, unable to shop without leaning on a cart) from the medical record that showed no indication he had trouble walking, with muscle strength, or with balance and his report during the consultative exam that he was able to conduct daily living activities.

[3] The ALJ concluded Mr. Tapper chose to retire (and draw Social Security retirement payments) and wasn't force to retire due to his impairments because, the ALJ decided, the medical evidence from 2010 through 2012 was relatively benign with sporadic cardiac complaints.

conclusion, tucked in the middle of the analysis, was simply a bookmark, but it leads the court to question whether the ALJ determined the limitations (or lack thereof) and then filled in the supporting evidence accordingly. At this point, the ALJ had little evidence of the specific limitations that are appropriate for a person with coronary artery disease.

As almost an afterthought, the ALJ noted the record reflected that Mr. Tapper was obese. The ALJ "took the claimant's obesity into account when limiting him to nonexertional restrictions only." This is the extent of the ALJ's discussion of Mr. Tapper's obesity at step four. Mr. Tapper argues the ALJ also had to: (1) consider his obesity when determining the appropriate exertional restrictions; (2) consider the combined impact of his obesity with his other severe impairment, coronary artery disease; and (3) explain how the nonexertional restrictions related to his obesity. The court agrees. The ALJ found Mr. Tapper's obesity to be a severe impairment. If the ALJ thought Mr. Tapper's obesity didn't limit his exertional abilities, he needed to explain why. Arnett v. Astrue, 676 F.3d 586, 593 (7th Cir. 2012) ("If the ALJ thought [the claimant's] obesity has not resulted in limitations on [his] ability to work, he should have explained how he reached that conclusion."). The ALJ also had to consider the impact of Mr. Tapper's obesity in combination with his coronary artery disease, and perhaps Mr. Tapper's other non-severe impairments. Id. ("An ALJ must factor in obesity when determining the aggregate impact of an applicant's impairments."). Finally, the ALJ needed to explain how the evidence

supported his conclusion that Mr. Tapper's obesity limited his nonexertional abilities as incorporated by the ALJ in the RFC. Id. (ALJ "must explain its decision such that it may be meaningfully reviewed.").

Mr. Tapper also argues the ALJ didn't consider: the effects of his fatigue due to his sleep apnea and periodic limb movement disorder; how the stress of his prior work exacerbated his heart condition by causing chest pain and tightness; and the effects of the neuropathy in his fingers. Earlier in the decision, the ALJ determined these conditions weren't severe and didn't impose more than "minimal, if any, limitation upon the claimant's ability to perform basic work activities. Nevertheless, . . . the undersigned considered all medically determinable impairments in combination when . . . assessing the claimant's residual functional capacity." This vague statement doesn't allow the court to meaningfully review how the ALJ considered these non-severe impairments in his RFC determination. Arnett v. Astrue, 676 F.3d 586, 591-592 (7th Cir. 2012). All three conditions could potentially affect Mr. Tapper's work related abilities, and if the ALJ thought they didn't limit Mr. Tapper's ability to work, the ALJ should have explained how he reached that conclusion.

The ALJ needn't "mention every snippet of evidence in the record," but "he may not ignore entire lines of contrary evidence." Id. at 592. The ALJ's failure to mention a severe impairment and several non-severe impairments in the RFC analysis suggests the ALJ's mode of analysis produced an RFC conclusion based only on selective evidence in the record. *See e.g.*, Scrogham v.

Colvin, 765 F.3d 685, 698 (7th Cir. 2014) ("Specifically, the ALJ identified pieces of evidence in the record that supported her conclusion that [the claimant] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). The ALJ's failure to consider the work related limitations of Mr. Tapper's obesity, fatigue, stress, and neuropathy or to articulate his reasoning for their lack of work related limitations requires reversal, but to guide the ALJ towards a more complete RFC analysis upon remand, the court continues its review.

C. Medical Opinion Evidence

Mr. Tapper argues the ALJ didn't evaluate the opinion evidence properly, and, as a result, the RFC isn't supported by the record. The Commissioner argues that the ALJ's RFC determination doesn't have to be based on a specific medical opinion of record, and the RFC determination is reserved for the ALJ. The ALJ considered medical opinions from Mr. Tapper's treating cardiologist, the consultative physician, and a State Agency medical consultant.

The ALJ gave little weight to the opinion of Mr. Tapper's cardiologist, Dr. Kavinsky, who performed Mr. Tapper's heart surgery in 2007 and has been his treating cardiologist ever since.[4] This "opinion" is found in an "Exercise

---

[4] Mr. Tapper says the ALJ didn't analyze the factors required under 20 C.F.R. § 404.1527(c). The ALJ did, however, review the factors indirectly in his analysis of the doctor's opinion, albeit perhaps incorrectly, when he: acknowledged the length of the treatment

Treadmill ECG Authorization" form that Dr. Kavinsky filled out at the Disability Determination Bureau's request in August 2010. The form asked, "Are there any contraindications restricting the claimant from undergoing an exercise treadmill ECG?" Dr. Kavinsky answered, "Yes, pt cannot tolerate[ ] any exercise/treadmill. CAD is disabling." The form asked, "Would the attending medical source be willing to perform an exercise treadmill ECG?" Dr. Kavinsky answered, "No, b/c he has severe disabling coronary disease." In response to similar questions posed by the Disability Determination Bureau, in September 2010, on the "Attending Physician's Statement – Advisability & Availability of Exercise Test" form, Dr. Kavinsky again indicated, "pts morbid obesity, disabling coronary artery disease" were contraindications that restricted Mr. Tapper from undergoing an exercise study and again declined to perform the exercise study "because his coronary artery disease has severely disabled him from being able to complete such exam."

The ALJ recognized that Dr. Kavinsky opined that Mr. Tapper had morbid obesity and coronary artery disease that was disabling and that Mr. Tapper wasn't able to tolerate a stress test. But, the ALJ found, and the Commissioner agrees, that Dr. Kavinsky's opinion conflicted with the cardiologist's own records. According to the ALJ, Dr. Kavinsky's records showed that after the surgery, Mr. Tapper's coronary heart disease was stable,

---

relationship and that the doctor was a cardiologist; pointed out the length of time between examinations; found the treatment to be routine; and found the doctor's opinion to be inconsistent with his own treatment notes.

and in October 2011, Mr. Tapper requested a cardiac work-up pre-gastric bypass surgery that included a stress test. The ALJ said the record didn't reflect that Mr. Tapper wasn't able to participate in that test. The ALJ also noted a finding of disability is reserved for the Commissioner.

Mr. Tapper says the ALJ's reasoning isn't supported by the record and mischaracterizes Dr. Kavinsky's treatment notes. The court agrees. Dr. Kavinsky offered his "opinion" that Mr. Tapper's coronary artery disease was disabling in response to the question of whether he was willing to authorize and administer an exercise treadmill ECG for Mr. Tapper. He declined to do so due to his patient's condition. The ALJ disregarded the conclusion of Mr. Tapper's treating cardiologist as inconsistent with "stable" coronary artery disease. Neither the ALJ, nor this court, is a medical professional or able to conclude whether Mr. Tapper's medical condition was up to an exercise treadmill ECG in 2010 – the context in which Dr. Kavinsky opined that Mr. Tapper was "disabled." *See* Hopgood ex rel. L.G. v. Astrue, 578 F.3d 696, 702 (7th Cir. 2009) (ALJ's determinations must be based on testimony and medical evidence in the record and not the ALJ's own independent medical findings.). The ALJ also emphasized that no evidence showed that a stress test wasn't performed at a later date in 2011. The record also contains no evidence that a stress test was, in fact, performed. Mr. Tapper says the stress test authorized by Dr. Kavinsky in October 2011 was an "Exercise Spect MPI with Nuclear Imaging" that uses a medication instead of exercise to induce the stress. The

ALJ isn't a medical professional and can't know the physical limitations of "stable" coronary heart disease. For that, he needed to rely on the medical opinions in the record. That Mr. Tapper's cardiologist wasn't willing to authorize or perform a treadmill stress test seriously undermines the ALJ's determination that Mr. Tapper had no exertional limitations. *See* Scrogham v. Colvin, 765 F.3d 685, 696 (7th Cir. 2014) (ALJ erred by ignoring evidence in the record which caused ALJ to discredit opinions of claimant's treating physicians).

Mr. Tapper claims the ALJ's concluding comment that a finding of disability is reserved for the Commissioner is legal error. Mr. Tapper takes the legal implications of this statement a bit too far. "[W]hether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician. But the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored." Garcia v. Colvin, 741 F.3d 758, 760 (7th Cir. 2013). So, the ALJ wasn't bound by Dr. Kavinsky's disability conclusion, but he had to consider Dr. Kavinsky's opinion. The court can't say the ALJ did anything but try to explain why he didn't credit the cardiologist's opinion.

The ALJ also considered the opinion of the physician who performed Mr. Tapper's consultative exam. The ALJ interpreted the doctor's opinion to say, "the claimant has no restrictions with respect to work-related activities." The

doctor's full conclusion was, "Despite impairments with respect to work-related activities the claimant has the ability to sit, stand, walk, handle objects, hear, see and speak." The opinion is relatively unhelpful when considering the extent of Mr. Tapper's exertional abilities.

Finally, the ALJ considered the December 2010 opinion of the State Agency medical consultant. That doctor opined that Mr. Tapper was capable of less than the full range of light work with the following restrictions: lift/carry/push/pull up to ten pounds frequently and twenty pounds occasionally; sit a total of six hours in an eight hour workday; and stand/walk a total of six hours in an eight hour day. The ALJ gave this opinion great weight, but modified it to reflect no exertional restrictions due to what the ALJ characterized as Mr. Tapper's relatively routine, conservative treatment, his denial of shortness of breath, chest pains, and syncope, and the relatively unremarkable diagnostic testing. Mr. Tapper says the ALJ's decision to alter the restrictions after giving this opinion great weight is contradictory and led to the ALJ making medical determinations. The court agrees, in part. As the Commissioner argues, the ALJ is to make the ultimate RFC determination based on all of the evidence – both medical and non-medical. The ALJ's reasons for modifying the consultative doctor's recommended restrictions are medical. The consultative doctor presumably would have considered the "relatively routine, conservative treatment" of Mr. Tapper's coronary artery disease and "his continuous denial of shortness of breath, chest pains, and syncope" when

the doctor opined that Mr. Tapper should be restricted to light work. The ALJ's decision to make his own medical determinations and ignore the recommended restrictions of the consultative doctor isn't supported by the record.

The ALJ erroneously disregarded the medical opinion of Mr. Tapper's treating cardiologist that he wouldn't authorize an exercise treadmill ECG for his patient as inconsistent with the doctor's treatment notes, exaggerated the usefulness of the consultative examiner's opinion, and made medical conclusions when modifying the consultative doctor's recommended limitations. As a result, the ALJ's RFC assessment isn't supported by the medical opinions of record, and, in turn, the ALJ doesn't offer a logical bridge between the opinion evidence and his conclusion that Mr. Tapper has no exertional limitations.

In an attempt to salvage the decision, the Commissioner argues the vocational expert testified that Mr. Tapper could perform his past work even if he were limited to light work, so the ALJ's failure to limit Mr. Tapper to light work, as recommended by the consultative doctor, is harmless. The court can't make this analytical leap with the Commissioner. Too much evidence was overlooked and ignored by the ALJ's analysis to conclude the vocational expert's testimony made the ALJ's erroneous RFC assessment meaningless.

D. Credibility

Finally, Mr. Tapper argues the ALJ didn't properly assess his credibility. First, he says the ALJ can't disregard subjective complaints of disabling pain. That's an accurate statement of the law, *see* Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) ("ALJ cannot disregard subjective complaints of disabling pain just because a determinable basis for pain of that intensity does not stand out in the medical record."), but Mr. Tapper doesn't point to any testimony about disabling pain that the ALJ ignored. Next, Mr. Tapper says the ALJ didn't address evidence favorable to him. The ALJ compared Mr. Tapper's testimony to his cardiologist's treatment notes. In April 2011, Mr. Tapper reported that he could walk one to two blocks without getting short of breath, which the ALJ noted was inconsistent with his hearing testimony that he had shortness of breath if he walked 100 feet. In general, the ALJ said the cardiologist's notes showed no balance issues, either reported or observed during an appointment, which was inconsistent with Mr. Tapper's hearing testimony that he had trouble standing. Mr. Tapper doesn't dispute these two conclusions; instead, he focuses on the following two issues. The ALJ found Mr. Tapper's testimony that he couldn't shop without leaning on a cart contradicted the medical record, which showed no indication he had trouble walking. But Mr. Tapper points out that Dr. Kavinsky documented intermittent pain in Mr. Tapper's bilateral calves when he walked. Second, the ALJ noted that at his October 2011 appointment with Dr. Kavinsky, Mr. Tapper denied shortness of breath. Mr.

Tapper points to an October 2011 appointment with Dr. John Brady at which he reported shortness of breath with exertion.

The Commissioner argues that no evidence supports Mr. Tapper's claims of extreme limitations. Perhaps this is true, but in light of the ALJ's incomplete discussion of the objective medical evidence and the opinion evidence, the court is wary of more omitted evidence, and so, skeptical about the ALJ's credibility findings. *See e.g.,* Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014) ("As a result of the ALJ's failure to follow the proper methodology, we have reason to doubt the accuracy of her credibility determination . . . ."). The ALJ's credibility determination won't be disturbed unless it is patently wrong, Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995), but the court encourages the ALJ to further develop his credibility analysis upon remand by considering the evidence Mr. Tapper has highlighted that supports his testimony.

## IV. CONCLUSION

The court doesn't decide that Mr. Tapper is entitled to benefits. He might have exaggerated his limitations, as the ALJ found, and perhaps a more in-depth review of the evidence will show that he can perform some work, and even his past work. But the court can't uphold the ALJ's decision that Mr. Tapper had no exertional limitations due to the flaws in the ALJ's RFC analysis. *See* Scrogham v. Colvin, 765 F.3d 685, 701 (7th Cir. 2014) (ALJ's decision reversed "because an administrative agency's decision cannot be

upheld when the reasoning process employed by the decision maker exhibits deep logical flaws, even if those flaws might be dissipated by a fuller and more exact engagement with the facts."). The ALJ's decision isn't supported by substantial evidence and doesn't provide a logical bridge between the evidence and the ALJ's conclusions. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The Commissioner's denial of benefits is REVERSED and this case is REMANDED with instructions to return the matter to the Social Security Administration for further proceeding consistent with this opinion.

SO ORDERED.

ENTERED: March 30, 2015

/s/ Robert L. Miller, Jr.
Judge
United States District Court